LASSEN LUMBER & BOX CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 3431. Promulgated February 19, 1927.

1. Petitioner had a ten-year contract for cutting timber on a Federal forest reserve. There was a substantial supply of privately owned logs and timber available. The contract with the Government contained a provision for extension should conditions warrant such a change in its condition. There was a large supply of Federal forest reserve timber available for the petitioner's purposes on the usual terms for the sale of such timber to private operators. *Held*, that in these conditions the petitioner was not entitled to depreciate its plant assets with a normal useful life in excess of ten years on the basis of the ten-year term of the timber sale agreement with the Government.

2. Basis of depreciation for plant assets determined from the evidence adduced at the hearing.

*Walter Slack, Esq., O. K., Cushing, Esq.*, and *C. V. Rowe, C. P. A.*, for the petitioner.

*A. Calder Mackay, Esq.*, for the respondent.

79705°—28——16

This is a proceeding for the redetermination of deficiencies in income and profits taxes for the years 1919 and 1920, in the respective amounts of $10,881.68 and $29,525.93, which arise from a controversy over the proper basis for depreciating certain tangible assets, to ascertain the annual deductions for exhaustion, wear and tear to which the petitioner is entitled for the taxable years. All the issues raised in a supplementary petition were abandoned at the hearing. The whole amount in controversy is $40,407.61.

### FINDINGS OF FACT.

The petitioner is a California corporation with its principal office at San Francisco. During the taxable years it was engaged in logging, in converting logs into lumber, in manufacturing boxes, and in the marketing of the various products resulting from its operations. Its manufacturing plant is located at Susanville, in the northeastern section of California, on the eastern slope of the Sierra Nevada Mountains.

On May 13, 1918, the petitioner entered into a timber sale agreement with the Forest Service of the United States Department of Agriculture, whereby it agreed to purchase all the saw logs and lodgepole pine ties in 26,000 acres of the forest reserve of the Government of the United States in two tracts designated as the Norval Flat Logging Chance and the McCoy Logging Chance. The tracts so acquired were estimated in the agreement to include 233,200 thousand board feet of saw timber, and 35,000 lodge-pole pine railroad ties. This agreement contained many provisions, of which only the following are material to the issues to be determined:

The cutting and removal of timber under this agreement shall begin not later than July 1, 1918, and unless extension of time is granted shall be completed not later than July 1, 1929. Unless such amounts are reduced in writing by the Forester at least 10,000,000 feet B. M. will be cut prior to July 1, 1919; at least 76,000,000 feet B. M. will be cut prior to July 1, 1922; at least 145,000,000 feet B. M. will be cut prior to July 1, 1925; at least 213,000,000 feet B. M. prior to July 1, 1928, and the remainder of the timber during the remaining period.

 *  *  *  *  *  *  *

Saw mills, camps, buildings, roads, and other necessary structures will be located and operated subject to such regulation by the forest officer in charge as may be necessary for the protection of National Forest interests. Except as hereinafter provided, all improvements will be removed from National Forest lands within six months after the termination of this agreement, unless permits or easements are secured from the officer of the United States having jurisdiction and in accordance with Federal laws for their future occupancy and use. If not removed within such time or further occupancy and use under such permits or easements authorized, they will become the property of the United States.

 *  *  *  *  *  *  *

(f) It is further agreed that the Secretary of Agriculture will, upon written application from the purchaser showing good and sufficient reasons therefor

and specifically the existence of a serious emergency arising from changes in market conditions since the readjustment, at his option, when action of either character is necessary to relieve the purchaser from hardship, either—

(1) Redetermine and establish the stumpage rates and designate a date when the rates as redetermined shall be effective, which date shall be within six months of the date of application; or

(2) Grant an extension of time, within which the respective amounts of timber specified in Section 3 shall be removed, not to exceed the total period allowed for cutting all the timber.

Included in the agreement were the rules, regulations, and restrictions under which the operations of the petitioner were to be conducted, and provisions that it should make, deliver, and maintain a bond in the amount of $40,000, to guarantee satisfactory compliance with all the terms and conditions of such agreement.

Upon the execution of the timber sale agreement, the petitioner at once began the erection of buildings, the installation of all the necessary machinery and equipment and material for logging and manufacturing and marketing lumber and boxes. In its income and profits-tax return for the year ended December 31, 1919, the petitioner, under "Schedule A–18 Exhaustion, Wear and Tear," included the following statement and deducted the depreciation thereon indicated from its gross income for such year:

| | ACQUIRED 1918–1919. | PROBABLE LIFE. | DEPRECIATION 1919. |
|---|---|---|---|
| **SUSANVILLE.** | | | |
| Automobile | $3,119.10 | 7 years | $463.25 |
| Box Factory Machinery and Equipment | 75,159.81 | Ten years | 7,165.98 |
| Mill #1 Construction | 50,513.45 | do | 5,051.34 |
| Mill #2 Construction | 17,533.05 | do | 1,753.29 |
| Box Factory Construction | 34,533.11 | do | 3,453.31 |
| Construction Tools | 731.26 | 4 years | 182.81 |
| Bond Construction | 7,732.69 | | |
| Machine Shop Construction | 769.81 | Ten years | 76.98 |
| Office Construction | 3,775.08 | do | 377.50 |
| Cottage Construction | 40,154.96 | do | 4,015.50 |
| Garage Construction | 1,635.80 | do | 163.58 |
| Stable Construction | 934.55 | do | 93.45 |
| Dormitory & Dining Hall | 5,571.66 | | |
| Fire Equipment | 5,226.09 | 4 years | 1,306.52 |
| Hose House Construction | 155.89 | do | 38.97 |
| Hotel Construction | 15,956.84 | Ten years | 1,595.99 |
| Hotel Equipment | 9,444.55 | 4 years | 2,361.14 |
| Machine Shop Equipment | 1,719.40 | do | 429.78 |
| Mill #2 Machinery & Equipment | 30,013.51 | Ten years | 2,851.36 |
| Mill #1 do do | 76,703.52 | do | 6,770.35 |
| Office Equipment | 2,128.18 | do | 212.81 |
| Oil House Construction | 192.92 | do | 19.29 |
| Pond Unloading Equipment | 2,174.76 | do | 217.47 |
| Planing Mill Construction | 1,688.68 | | |
| Spur Construction | 9,276.44 | do | 927.64 |
| Stable Equipment | 996.20 | do | 99.62 |
| Tent House | 685.93 | 4 years | 171.48 |
| Water Lines | 9,206.22 | Ten years | 920.62 |
| Shook Warehouse Construction | 7,206.99 | do | 720.69 |
| General Warehouse Construction | 2,523.68 | do | 252.37 |
| Yard Trackage | 25,796.81 | do | 2,309.38 |
| Yard Construction | 19,583.33 | do | 1,958.33 |
| Yard Equipment | 14,364.81 | do | 1,436.48 |
| **SAN FRANCISCO.** | | | |
| Office Furniture | 1,440.18 | Ten years | 144.02 |
| Totals | 478,649.35 | | 47,541.30 |

In its income and profits-tax return for the year ended December 31, 1920, the petitioner, under " Schedule A–18 Exhaustion, Wear and Tear," included the following statement, and deducted the depreciation thereon indicated from its gross income for such year:

| | VALUE. | ALL AC-QUIRED DURING YEARS 1918–19–20. | PROBABLE LIFE. | DEPRECIA-TION PRE-VIOUS YEARS. | DEPRECIA-TION THIS YEAR. |
|---|---|---|---|---|---|
| SUSANVILLE. | | | | | |
| Autos | $10,017.41 | | 4 yrs | $463.25 | $2,503.39 |
| Box Factory Const | 40,757.54 | | 10 " | 3,453.31 | 4,075.75 |
| Box Factory Machinery & Equipment | 91,030.89 | | 10 " | 7,165.98 | 9,103.09 |
| Cottage Const | 82,629.62 | | 10 " | 4,015.50 | 8,262.96 |
| Cabins | 5,772.28 | | 10 " | | 577.22 |
| Dormitory Const | 7,443.31 | | 10 " | | 744.33 |
| do Equip | 2,136.96 | | 10 " | | 213.69 |
| Electric Const | 2,123.47 | | 10 " | | 212.35 |
| Fire Equipment | 25,826.67 | | 4 " | 1,306.52 | 6,456.67 |
| Water Tank | 6,562.25 | | 10 " | | 656.22 |
| Garage Const | 3,435.07 | | 10 " | 163.58 | 343.50 |
| Gas Supply stand | 321.30 | | 10 " | | 32.13 |
| Hotel Annex Const | 20,785.15 | | 10 " | | 2,078.51 |
| do do Equip | 511.36 | | 4 " | | 127.88 |
| Hose House | 155.89 | | 10 " | 38.97 | 15.58 |
| Hotel Alpine const | 19,272.92 | | 10 " | 1,595.99 | 1,927.29 |
| Hotel Alpine Equip | 10,925.63 | | 7 " | 2,361.14 | 1,638.84 |
| Improvement, Sidewalks | 1,201.16 | | 10 " | | 120.11 |
| Lath Mill Const | 3,448.72 | | 10 " | | 344.77 |
| Machine Shop Const | 2,000.40 | | 10 " | 76.98 | 200.04 |
| Machine Shop Equip | 7,255.09 | | 4 " | 429.78 | 1,813.77 |
| Mill #1 Const | 53,302.17 | | 10 " | 5,051.34 | 5,330.22 |
| Mill #1 Mach & Equip | 75,364.39 | | 7 " | 6,770.35 | 7,536.44 |
| Mill #2 Const | 23,571.27 | | 10 " | 1,753.29 | 2,357.12 |
| Mill #2 Mach & Equip | 25,278.05 | | 10 " | 2,851.36 | 2,527.80 |
| Office Const | 5,215.59 | | 10 " | 377.50 | 521.56 |
| Office Equipment | 3,423.71 | | 10 " | 212.81 | 342.37 |
| Oil House | 192.92 | | 10 " | 19.29 | 19.29 |
| Pond Const | 25,973.36 | | 10 " | | 2,597.33 |
| Pond Unloading Equip | 4,320.75 | | 10 " | 217.47 | 432.07 |
| Planing Mill Const | 16,434.97 | | 10 " | | 1,643.49 |
| Pipe Shop Equip | 504.58 | | 10 " | | 50.45 |
| Power Plant | 98,280.13 | | 10 " | | 9,828.01 |
| Stable Constr | 961.00 | | 10 " | 93.45 | 96.10 |
| Construction Tools | 1,855.95 | | 10 " | 182.81 | 185.59 |
| Tent House | 760.60 | | 4 " | 171.48 | 190.13 |
| Warehouse Const | 3,065.94 | | 10 " | 252.37 | 306.59 |
| Shook House Const | 7,206.99 | | 10 " | 720.69 | 720.69 |
| Yard Trackage | 30,197.04 | | 10 " | 2,309.38 | 3,019.70 |
| Yard Constr | 33,231.69 | | 10 " | 1,958.33 | 3,323.17 |
| Yard Equip | 19,653.34 | | 10 " | 1,436.48 | 1,965.33 |
| Camp #2 | 13,333.71 | | 10 " | | 1,333.37 |
| Camp #3 | 14,299.09 | | 10 " | | 1,429.90 |
| Well | 955.00 | | 10 " | | 95.50 |
| Duck Lake Spur | 1,495.97 | | 2 " | | 747.99 |
| Stable Equip | 1,963.57 | | 10 " | 99.62 | 196.35 |
| Live Stock | 1,550.00 | | 5 " | | 310.00 |
| Spur Constr | 9,276.44 | | 10 " | 927.64 | 927.64 |
| Water Lines | 9,487.81 | | 10 " | 920.62 | 948.78 |
| Logging Equip | 188,808.66 | | 5 " | | 18,880.86 |
| Warehouse Equip | 147.81 | | 10 " | | 14.78 |
| Pond Unloading Tools & Equip | 6.14 | | 10 " | | .61 |
| Discarded Machinery | 1,485.00 | | 2 " | | 742.50 |
| SAN FRANCISCO. | | | | | |
| Office Furniture | 1,452.18 | | 10 " | 144.02 | 145.21 |
| Total | 1,016,668.91 | | | 47,541.30 | 110,215.03 |

The total aggregate cost of all plant assets to December 31, 1918, the cost of additions to such assets during the year 1919, and the total aggregate cost at December 31, 1919, were as follows:

| | Total aggregate cost, December 31, 1918. | Additions, 1919. | Total aggregate cost, December 31, 1919. |
|---|---|---|---|
| Automobile and Trucks | $803.00 | $2,316.10 | $3,119.10 |
| Box Factory Construction | 21,562.89 | 12,970.22 | 34,533.11 |
| Box Factory Mach. and Equipt | 34,970.45 | 40,189.36 | 75,159.81 |
| Camp #2 Constr | | | |
| Camp #3 Constr | | | |
| Construction Tools | 731.26 | | 731.26 |
| Cottage Constr | 2,588.56 | 37,566.40 | 40,154.97 |
| Cabins Constr | | | |
| Dormitory Constr | | 5,571.66 | 5,571.66 |
| Dormitory Equipt | | | |
| Electric Const | | | |
| Fire Equipt | 2,460.88 | 2,765.21 | 5,2 6.09 |
| Fire Protection Water Tank | | | |
| Garage Constr | 217.81 | 1,417.99 | 1,635.80 |
| Gas Supply Stand | | | |
| Hose House Constr | 155.89 | | 155.89 |
| Hotel Annex Constr | | | |
| Hotel Annex Equipt | | | |
| Hotel Alpine Constr | | 15,956.84 | 15,956.84 |
| Hotel Alpine Equipt | | 9,444.55 | 9,444.55 |
| Improvement A/C | | | |
| Live Stock A/C | | | |
| Lath Mill Const | | | |
| Logging Equipt | | | |
| Machine Shop Constr | 644.20 | 125.61 | 769.81 |
| Machine Shop Equipt | 1,040.41 | 679.08 | 1,719.49 |
| Mill #1 Constr | 97,304.44 | 46,790.89 | 50,513.45 |
| Mill #1 Machy. and Equipt | 34,349.45 | 42,354.07 | 76,703.52 |
| Mill #2 Constr | 17,990.31 | 457.26 | 17,533.05 |
| Mill #2 Machy. and Equipt | 12,386.68 | 17,626.83 | 30,013.51 |
| Office Constr | 2,270.17 | 1,504.91 | 3,775.08 |
| Office Equipt. and Furn | 1,576.86 | 551.32 | 2,128.18 |
| Oil House Constr | | 192.92 | 192.92 |
| Pond Constr | 7,679.14 | 53.55 | 7,732.69 |
| Pond Unloading Equipt | 2,023.44 | 151.32 | 2,174.76 |
| Planing Mill Constr | | 1,688.68 | 1,688.68 |
| Pipe Shop Equipt | | | |
| Power Plant | | | |
| Spur Constr | 9,493.27 | 216.83 | 9,276.44 |
| Stable Constr | 517.21 | 417.34 | 934.55 |
| Stable Equipt | | 996.20 | 996.20 |
| Tent House A/C | | 685.93 | 685.93 |
| Warehouse Constr. Genl | | 2,523.68 | 2,523.68 |
| Warehouse Equipt | | | |
| Water Lines | 5,944.79 | 3,261.43 | 9,206.22 |
| Shook Warehouse Constr | | 7,206.99 | 7,206.99 |
| Yard Trackage | 3,803.60 | 21,993.21 | 25,796.81 |
| Yard Constr | 4,506.20 | 15,077.13 | 19,583.33 |
| Yard Equipt | 2,148.66 | 12,216.15 | 14,364.81 |
| Well | | | |
| Duck Lake Spur | | | |
| Discarded Machinery | | | |
| Pond Unloading Tools and Equipt | | | |
| S. F. Office Furniture | | 1,440.18 | 1,440.18 |
| | 267,169.57 | 211,479.78 | 478,649.35 |

The total aggregate cost of all plant assets of the petitioner at December 31, 1919, the cost of additions thereto during the year 1920, and the total aggregate cost at December 31, 1920, were as follows:

| | Total aggregate cost December 31, 1919. | Additions, 1920. | Total aggregate cost December 31, 1920. |
|---|---|---|---|
| Automobiles and Trucks | $3,119.10 | $6,898.31 | $10,017.41 |
| Box Factory Construction | 34,533.11 | 6,224.43 | 40,757.54 |
| Box Factory | 75,159.81 | 15,871.08 | 91,030.89 |
| Camp #2 Constr | | 13,333.71 | 13,333.71 |
| Camp #3 Constr | | 14,299.09 | 14,299.09 |
| Construction Tools | 731.26 | 1,124.69 | 1,855.95 |

| | Total aggregate cost December 31, 1919. | Additions, 1920. | Total aggregate cost December 31, 1920. |
|---|---|---|---|
| Cottage Constr | $40,154.96 | $42,474.66 | $82,629.62 |
| Cabins Constr | | 5,772.28 | 5,772.28 |
| Dormitory Constr | 5,571.66 | 1,871.65 | 7,443.31 |
| Dormitory Equipt | | 2,136.96 | 2,136.96 |
| Electric Const | | 2,123.47 | 2,123.47 |
| Fire Equipt | 5,226.09 | 20,600.58 | 25,826.67 |
| Fire Protection Water Tank | | 6,562.25 | 6,562.25 |
| Garage Constr | 1,635.80 | 1,799.27 | 3,435.07 |
| Gas Supply Stand | | 321.30 | 321.30 |
| Hose House Constr | 155.89 | | 155.89 |
| Hotel Annex Constr | | 20,785.15 | 20,785.15 |
| " " | | 511.36 | 511.36 |
| Hotel Alpine Const | 15,956.84 | 3,316.08 | 19,272.92 |
| " " | 9,444.55 | 1,481.08 | 10,925.63 |
| Improvement A/C | | 1,201.16 | 1,201.16 |
| Live Stock A/C | | 1,550.00 | 1,550.00 |
| Lath Mill Const | | 3,448.72 | 3,448.72 |
| Logging Equipt | | 188,808.66 | 188,808.66 |
| Machine Shop Constr | 769.81 | 1,230.59 | 2,000.40 |
| Machine Shop Equipt | 1,719.49 | 5,535.60 | 7,255.09 |
| Mill #1 Constr | 50,513.45 | 2,788.72 | 53,302.17 |
| Mill #1 Machy. and Equipt | 76,703.52 | 1,339.13 | 75,364.39 |
| Mill #2 Constr | 17,533.05 | 6,038.22 | 23,571.27 |
| Mill #2 Mach and Equipt | 30,013.51 | 4,735.46 | 25,278.05 |
| Office Constr | 3,775.08 | 1,440.51 | 5,215.59 |
| Office Equipt and Furn | 2,128.18 | 1,295.53 | 3,423.71 |
| Oil House Constr | 192.92 | | 192.92 |
| Pond Constr | 7,732.69 | 18,240.67 | 25,973.36 |
| Pond Unloading Equipt | 2,174.76 | 2,145.99 | 4,320.75 |
| Planing Mill Constr | 1,688.68 | 14,746.29 | 16,434.97 |
| Pipe Shop Equipt | | 504.58 | 504.58 |
| Power Plant | | 98,280.13 | 98,280.13 |
| Spur Constr | 9,276.44 | | 9,276.44 |
| Stable Constr | 934.55 | 26.45 | 961.00 |
| Stable Equipt | 996.20 | 967.37 | 1,963.57 |
| Tent House A/C | 685.93 | 74.67 | 760.60 |
| Warehouse Constr. Genl | 2,523.68 | 542.26 | 3,065.94 |
| Warehouse Equipt | | 147.81 | 147.81 |
| Water Lines | 9,206.22 | 281.59 | 9,487.81 |
| Shook Warehouse Constr | 7,206.99 | | 7,206.99 |
| Yard Trackage | 25,796.81 | 4,400.23 | 30,197.04 |
| Yard Constr | 19,583.33 | 13,648.36 | 33,231.69 |
| Yard Equipt | 14,364.81 | 5,288.53 | 19,653.34 |
| Well | | 955.00 | 955.00 |
| Duck Lake Spur | | 1,495.97 | 1,495.97 |
| Discarded Machinery | | 1,486.14 | 1,486.14 |
| Pond Unloading Tools and Equipt | | 6.14 | 6.14 |
| S. F. Office Furniture | 1,440.18 | 12.00 | 1,452.18 |
| | 478,649.35 | 538,019.56 | 1,016,668.91 |

Upon audit of the petitioner's income and profits tax returns for the years 1919 and 1920, the Commissioner disallowed deductions from gross income for each of such years on account of depreciation in the respective amounts of $25,640.97 and $66,701.90, and added such amounts to the taxable income of the petitioner for the respective taxable years.

The petitioner began the erection of its plant and the assembly of its logging and manufacturing equipment in the latter half of the year 1918, while the World War was still in progress. At that time, and for many months thereafter, it was very difficult, and, as to many necessary items, wholly impossible, to purchase new machinery and equipment. The plant assets acquired in 1918 and 1919 were largely secondhand, and, in many instances, were too light for economic use in logging and manufacturing the heavy timber owned

by the petitioner. During the taxable years, all completed sections of the manufacturing plant were operated two shifts a day for eight and one-half months of each year. The water supply of the petitioner was impregnated with alkali, and the useful life of boilers, fire extinguishing equipment and water mains was thereby greatly reduced.

The useful life of plant assets is as follows: 20 years—box factory, cottages, cabins, dormitories, water tank, hotel buildings, lath mill, machine shop, office building, pond construction, planing mill, warehouses and trackage spurs; 15 years—except in mill No. 1, machinery of all types, the buildings of mill No. 1 and mill No. 2, power plant and warehouse equipment; 10 years—camp construction, electrical installation, gas supply stand, hose house, office equipment and furniture, oil house, pond equipment, track equipment, water lines, garage, and stables; 7 years—hotel equipment and machinery and equipment of mill No. 1; 5 years—live stock and logging equipment; 4 years—automobiles, fire equipment, tent house; 2 years—Duck Lake Spur and discarded machinery.

### OPINION.

LANSDON: The sole issue for consideration here is the correct deduction from gross income to which the petitioner is entitled in its income and profits-tax returns for each of the taxable years on account of exhaustion, wear and tear of tangible assets used in its business. In the computation of the amounts to be so deducted, the petitioner and the respondent differ—(1) as to the proper method of depreciating assets added by purchase during each of the years in question; (2) on the value and term of usefulness of plant assets that have a normal, useful life of less than ten years; and (3) on the method of computing depreciation of plant assets with a normal useful life in excess of ten years. The petitioner now admits that the average value of plant additions made during any given year, or one-half the total cost thereof for such year, is the proper basis for computing depreciation on annual additions to plant assets. This admission leaves only two phases of the controversy for our consideration.

The petitioner constructed its plant and assembled its logging equipment during and immediately subsequent to the World War. At the time it was difficult, and, as to many items, impossible to secure new machinery. Consequently, a large amount of secondhand equipment, much of it unsuitable for the heavy duty required by the nature of the timber to be logged and manufactured, was purchased and installed. Much of the equipment acquired in 1918 and 1919 had a useful life of less than ten years. We are also convinced by

the evidence adduced by the petitioner that its lists of assets with a useful life of less than ten years and its computations of depreciation thereon, as reported in its income and profits-tax returns for the years 1918 and 1919, are substantially correct, and, on this point, we sustain the contention of the petitioner.

The most important question for our consideration is whether the plant assets owned by the petitioner during the taxable years should be depreciated for income and profits-tax purposes on the basis of their normal useful life or on that of their alleged economic usefulness which the petitioner contends is, by the terms of its timber sale agreement with the Department of Agriculture, limited to eleven years from July 1, 1918.

It appears from the evidence that the timber sale agreement contained a provision for extension of time for cutting the timber thereby acquired if conditions warranted such change; that there was a considerable supply of logs and timber privately owned that was available for the operations of the petitioner and that in the taxable years it purchased substantial quantities of such raw materials; that there was much privately owned timberland within a profitable operating radius of the petitioner's plant; and that there were also large supplies of Government-owned timber within profitable operating distance of the plant, and that the petitioner was advised that such timber was available on the conditions imposed by the Department of Agriculture. The petitioner installed mills and equipment at a cost of more than one million dollars. It is fair to assume that men experienced in logging and manufacturing lumber must have believed that there was a reasonable prospect for securing timber during the normal life of a plant of such cost. To be entitled to recover the entire cost of its plant during the term of its contract with the Government, the petitioner must show that there was a practical certainty that it could not use its assets for the purposes of its business after the expiration of such contract. *Appeal of Eimer & Amend*, 2 B. T. A. 603. We are of the opinion that it has not sustained the burden of proof necessary to show that there would be no raw material available for its purpose at the termination of its original contract with the Government.

Having decided that the allowances for depreciation of its plant assets should not include obsolescence determined by the terms of the timber sale agreement, it follows that whatever allowances the petitioner is entitled to take on account of depreciation are matters of fact to be established by evidence. We have made a careful study of the testimony adduced at the hearing and we are of the opinion that the assets had a normal, useful life as set forth in our findings of fact.

Depreciation should be recomputed on the basis of our findings in conformity with this opinion.

> *Judgment will be entered on 20 days' notice, under Rule 50.*